UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK HUDSON | CIVIL ACTION |
| VERSUS | NO. 08-4754 |
| SCHLUMBERGER TECHNOLOGY CORPORATION, ET AL. | SECTION "N" (2) |

**ORDER AND REASONS**

Presently before the Court are several motions. The Court rules on them as follows:

(1) For the reasons stated below, **IT IS ORDERED** that the Motion for Summary Judgment filed by Defendants Schlumberger Technology Corporation ("STC"), Alpha Marine Services, Inc. ("Alpha"), and BP Exploration and Production, Inc. ("BP")(Rec. Doc. 46) is **GRANTED IN PART** and **DENIED IN PART**. As stated in his opposition memorandum, Plaintiff, Mark Hudson, now concedes that he is not a Jones Act seaman. Accordingly, the motion is granted insofar as Defendants STC and Alpha seek dismissal of Plaintiff's claims that are premised upon seaman status. The motion is denied, however, with respect to Plaintiff's negligence claims against Defendants Alpha and BP.

(2) **IT IS ORDERED** that Defendants' Motion to Strike Pleading (Rec. Doc. 54) is **DENIED**. On the showing made, the Court declines to strike an opposition to a motion for summary judgment because it arguably was electronically filed one to three minutes after midnight.

(3)  **IT IS ORDERED** that Defendant's Motion for Expedited Hearing (Rec. Doc. 55) is **DENIED** as **MOOT**.

(4)  **IT IS ORDERED** that Plaintiff's Motion to Continue Hearing Date (Rec. Doc. 58) is **DENIED**.  Plaintiff has had ample time to conduct necessary discovery and, if desired, to seek leave to file a response to Defendants' reply memorandum (Rec. Doc. 62).

## BACKGROUND

Plaintiff, Mark Hudson, filed this action against Defendants STC, Alpha, and BP for injuries that he sustained while performing seismic activities onboard the M/V C-Commander (the "vessel").  STC is Hudson's employer, Alpha owns the vessel, and BP chartered the vessel.[1]  BP hired STC to provide seismic services.  When the accident occurred, during the early morning hours of May 1, 2008, Plaintiff was assisting in spooling the seismic lines from the aft deck of the vessel.  Plaintiff alleges that, as he picked up one of the lines, he stepped in one of the several uncovered pad-eye holes, and twisted his knee.[2]

Seeking dismissal of Plaintiff's claims, Alpha and BP contend that they owed only three narrow duties to Plaintiff under section 5(b) of the Longshore and Harbor Workers Compensation ACT ("LHWCA"), 33 U.S.C. § 905(b), and that they did not breach any of these duties.  In response, Plaintiff maintains that triable issues exist with respect to whether one or more of these duties was breached by these defendants.  The Court finds this determination to be a close call.  On the limited showing made, however, the Court finds in Plaintiff's favor.

---

[1]  The M/V C-Commander is an offshore Edison Chouest supply vessel that is owned and operated by Alpha.

[2]  The Court understands a "pad-eye" to be a tie-down ring that, in this instance, was located in a hole in the deck of the vessel.

2

**LAW AND ANALYSIS**

I.  **Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit

4

a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**II.    Application**

In *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S. Ct. 1614, (1981), the Supreme Court articulated the scope of a vessel's duty under section 5(b) of the LHWCA. "The basic principle which emerges from *Scindia* is that the primary responsibility for the safety of the longshoremen rests upon the stevedore." *Greenwood v. Societe Francaise De Transportes Maritime,* 111 F.3d 1239, 1245 (5th Cir.) (quoting *Randolph v. Laeisz*, 896 F.2d 964, 970 (5th Cir.1990)), *cert. denied*, 522 U.S. 995, 118 S. Ct. 558 (1997). Vessel liability, however, may still be found in three instances:

> 1) if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known.
>
> 2) for injury caused by hazards under the control of the ship.
>
> 3) if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it.[3]

*Id.* (internal quotations and citations omitted).[4]

---

[3]    "[I]n order for the expert stevedore's judgment to appear 'obviously improvident,' that expert stevedore must use an object with a defective condition that is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm even when the stevedore's expertise is taken into account." *Greenwood,* 111 F.3d at 1249.

[4]    S*ee also Manuel v. Cameron Offshore Boats, Inc.,* 103 F.3d 31, 33 n.6 (5th Cir. 1997) (noting the application of *Scindia* to independent contractors other than stevedores under the LHWCA), and *Fontenot v. McCall's Boat Rentals, Inc.*, 227 Fed. Appx. 397, * 403-404, 2007 WL 1428985, ** 4-5 (5th Cir.) (unpub.)(distinguishing *Scindia* "active control" from the vessel captain's ultimate authority over the entire ship).

With respect to Defendants Alpha and BP, the Court assumes, for purposes of this motion, that they are entitled to summary judgment with respect to their turnover duties and their duties to exercise reasonable care in areas of the vessel under their control. With respect to the third *Scindia* duty, the limited duty to intervene, Alpha and BP do not contest that their respective vessel employees were aware that some pad-eye holes were open during the course of STC's operations. Rather, they maintain that the holes did not create a dangerous condition from which STC unreasonably failed to protect Plaintiff. Drawing all reasonable inferences in Plaintiff's favor, as it must, the Court concludes that triable issues exist to the contrary.

Specifically, although Plaintiff admittedly was aware that some of the pad-eyed holes in STC's work area were not covered, he explains that, at the time of the accident, the holes were not easily visible, and thus avoided as he moved about, because sea water had washed upon and covered that portion of the deck.[5] He additionally points to the early morning low-light conditions, and that the Alpha captain had just turned off the back stern lights in anticipation of sunrise, as contributing factors.[6] Furthermore, according to Plaintiff's uncontradicted testimony, the vessel crew, at the captain's instruction, actually had *removed* the covers kept aboard for the holes because the overflowing sea water often lifted and washed them away.[7] Finally, and significantly, the Court

---

[5] Plaintiff testified that, at the time of the accident, there was a film of water on deck rather than merely filling the open holes. *See* Plaintiff's Depo., Exhibit 2 (Rec. Doc. 51-3) to Plaintiff's opposition memorandum, at 114-16. Further, any contributory negligence attributable to Plaintiff would only reduce, not completely eliminate, Alpha's and/or BP's liability for its own actionable negligence.

[6] *Id.* at 114-16, 126, 128-29. Plaintiff testified that, although it was early morning, it was still dark enough that he noticed when the captain turned off the lights because it "changed the lighting on the back of the deck." *Id.* at 128.

[7] *Id.* at 98-99; *see also id.* at 114-6. Indeed, Plaintiff testified that the open pad-eye holes have water in them "[p]robably 90 percent of the time" when the vessel is offshore. *Id.* at 114.

notes the absence of any evidence that STC had taken any steps to cover the holes in the work area, along with the Alpha captain's view of that part of the deck from the wheelhouse of the vessel's bridge.[8]

Under these circumstances, the trier of fact reasonably could conclude that STC should have taken steps to protect its employees, including Plaintiff, from this obvious tripping hazard during the course of their work duties, but did not. Likewise, the same trier of fact reasonably could conclude that the Alpha captain was aware of this safety omission by STC, and, thus, should have intervened in this particular aspect of STC's operations. Therefore, although the *trial* evidence may demonstrate that Alpha's, and even STC's, inaction relative to the uncovered pad-eye holes actually was not legally inappropriate, this has not been demonstrated to be true, *as a matter of law*, at this juncture of this proceeding.[9]

The Court reaches the same conclusion with respect to Defendant BP. Although its alleged "safety guy," Willie Davis, was not on the deck at the time of Plaintiff's accident, he undisputedly observed, if not approved, STC's initial equipment setup aboard the vessel. Under these circumstances, and those outlined above, the trier of fact reasonably could find that Mr. Davis knew that STC had not taken steps during setup to cover the open pad-eye holes. Similar conclusions – particularly since this was Davis's third or fourth time working with STC employees on this vessel, and the accident occurred a number of days into the project – could be drawn with

---

[8] *Id.* at 201.

[9] The Court notes that the only deposition testimony that the parties have submitted in connection with Defendants' summary judgment motion is that of Plaintiff and Alfredo Arevalo, another STC employee.

7

respect to Mr. Davis's awareness of the deck conditions under which STC employees worked during the course of their seismic activities.

The Court is aware, as Defendants argue, that maritime employees, while working aboard seagoing vessels, often face dangers that do not and should not result in any legal liability. Here, as previously stated, the Court certainly does not conclude that Plaintiff must, as a matter of law, prevail at trial on his negligence claims, or that a ruling in Defendants' favor at trial, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, will not be appropriate. Rather, the Court simply finds that, on the showing made by the parties' summary judgment submissions, he is entitled to present these claims to the trier of fact for resolution.

## **CONCLUSION**

As stated herein, **IT IS ORDERED** that summary judgment is **GRANTED** in favor of Defendant Schlumberger Technology Corporation. With respect to Defendants Alpha Marine Services, Inc., and BP Exploration and Production, Inc., however, **IT IS ORDERED** that summary judgment is **DENIED**. Additionally, if the parties have not already done so, the Court urges them to promptly confer with STC's compensation carrier to determine if an amicable resolution of this entire matter can be achieved.

New Orleans, Louisiana, this 23rd day of February 2010.

```
          _____
          KURT D. ENGELHARDT
          UNITED STATES DISTRICT JUDGE
```